UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| NORMAN E. DICKINSON, | ) |
| | ) |
| Plaintiff | ) |
| v. | ) Civil No. 06-209-P-S |
| | ) |
| T. PURINTON, | ) |
| | ) |
| Defendant | ) |

*Recommended Decision on Motion for Summary Judgment and Order Denying Motion to Withdraw Declaration*

Norman Dickinson has filed a civil rights complaint against Trevor Purinton claiming that Purinton used excessive force on him when he hand-cuffed Dickinson, a pre-trial detainee who was causing a disturbance at the Cumberland County Jail. Purinton has filed a motion for summary judgment (Docket No. 11). In response Dickinson has not filed a memorandum or a response to Purinton's statement of fact, but, instead, has filed a declaration that is sworn under penalty of perjury and notarized.[1] I now recommend the court grant the defendant's motion.

*Discussion*

Purinton is entitled to summary judgment only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that [he is] entitled to

---

[1] After I had drafted this recommended decision and prior to docketing it with the clerk's office, Dickinson filed a Motion to Withdraw Declaration In Opposition to Defendant's Motion for Summary Judgment. (Docket No. 23.) I now deny that motion. I reviewed the "substitute" materials Dickinson wants to submit in lieu of the original declaration. (Docket Nos. 24, 25, & 26.) Nothing in those materials changes the legal standard to be applied here nor would the few additional factual disputes raised by the Amended Declaration necessarily change the outcome of this case. It would be fundamentally unfair to the defendant to allow these new pleadings to become the operative pleadings in this case. I realize Dickinson is a pro se litigant and this court must not strictly apply the Local Rules unfairly against him, but even a pro se pleader must comply with basic deadlines of this court and not expect the court to give him "two bites at the apple."

judgment as a matter of law." Fed. R. Civ. P. 56(c). A fact is material if its resolution would "affect the outcome of the suit under the governing law," and the dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). In reviewing the record for a genuine issue of material fact, the Court must view the summary judgment facts in the light most favorable to Dickinson, the nonmoving party, and credit all favorable inferences that might reasonably be drawn from the facts without resort to speculation. Merchants Ins. Co. N.H. v. U. S. Fid. & Guar. Co., 143 F.3d 5, 7 (1st Cir. 1998). If such facts and inferences could support a favorable verdict for Dickinson, then there is a trial-worthy controversy and summary judgment must be denied. ATC Realty, LLC v. Town of Kingston, 303 F.3d 91, 94 (1st Cir. 2002).

The District of Maine has a local rule pertaining to summary judgment. District of Maine Local Rule 56 as relevant provides:

> **(c) Opposing Statement of Material Facts.** A party opposing a motion for summary judgment shall submit with its opposition a separate, short, and concise statement of material facts. The opposing statement shall admit, deny or qualify the facts by reference to each numbered paragraph of the moving party's statement of material facts and unless a fact is admitted, shall support each denial or qualification by a record citation as required by this rule. Each such statement shall begin with the designation "Admitted," "Denied," or "Qualified" and, in the case of an admission, shall end with such designation. The opposing statement may contain in a separately titled section additional facts, each set forth in a separately numbered paragraph(s) and supported by a record citation as required by subsection (f) of this rule.
> ....
> **(f) Statement of Facts Deemed Admitted Unless Properly Controverted; Specific Record of Citations Required.** Facts contained in a supporting or opposing statement of material facts, if supported by record citations as required by this rule, shall be deemed admitted unless properly controverted. An assertion of fact set forth in a statement of material facts shall be followed by a citation to the specific page or paragraph of identified record material supporting the assertion. The court

2

> may disregard any statement of fact not supported by a specific citation to
> record material properly considered on summary judgment. The court
> shall have no independent duty to search or consider any part of the record
> not specifically referenced in the parties' separate statement of facts.

Dist. Me. Loc. R. 56(c),(f).

Clearly, Dickinson has not complied with this rule and Purinton argues strenuously in his reply memorandum that his effort is insufficient to defeat summary judgment. However, in terms of the state of the summary judgment record this case is really not distinguishable from Clarke v. Blais, 473 F.Supp.2d 124, 126 -30 (D. Me. 2007), a case in which the (likewise pro se) plaintiff had a similar nonconforming response to a summary judgment motion targeting the plaintiffs pre-trial detention excessive force claim. Accordingly, I accept for purposes of the summary judgment record the factual assertions in Dickinson's declaration and juxtapose them against the material facts set forth in Purinton's statement of material fact.

***Standard for Unconstitutional Force Claims by Pre-Trial Detainees***

Both Purinton and Dickinson assume that the Hudson v. McMillian, 503 U.S. 1 (1992) Eighth Amendment standard of cruel and unusual punishment applies to Dickinson's claim. (See Mot. Summ. J. at 6-7; Dickinson Decl. at 2.) The undisputed material facts describe Dickinson as a pretrial detainee[2] and therefore his constitutional claim arises under the Fourteenth Amendment. As Judge Hornby explains in his pattern jury instruction, the crux of the Due Process Clause is that it protects a pretrial detainee from the use of excessive force that amounts to punishment. Dist. Me. Pattern Jury Inst.

---

[2] Whether Dickinson's status as a probation violator and, thus, a person already convicted in court impacts this analysis is an issue I have not considered in fashioning this recommended decision. See Rankin v. Klevenhagen, 5 F.3d 103, 105-06 (5th Cir. 1993) (recognizing the source of the constitutional claim for pretrial detainees is not the same as for convicted inmates or pretrial detainees whose custody also flows from parole violations)

3.1 (Hornby, J.)(discussing footnote 10 of Graham v. Connor, 490 U.S. 386 (1989) and the applicable standard for these sorts of unconstitutional force cases). In my recommended decision in Clarke I allowed that the question of what standard to apply to a plaintiff's claim that he was subjected to unconstitutional force as a pre-trial detainee was open, in that some courts applied a quasi-Fourth Amendment objective reasonableness excessive force standard and others had settled on an Eighth Amendment cruel and unusual punishment standard. See Clarke v. Blais, Civil No. 5-177-P-H, 2006 WL 3691478, 6 -7 & ns. 5-7 (D. Me. 2006) rev'd on other grounds, 473 F. Supp. 2d 124 (D. Me. 2007). In that decision I concluded that even by the more plaintiff-favorable objective reasonableness standard of the Fourth Amendment, which would not require proof that the defendant acted maliciously and sadistically, Clarke's claim did not survive summary judgment. Judge Hornby, while not remarking on the applicable standard, reversed in part, concluding that Clarke's affidavit that he was subjected to excessive force was sufficient to create a genuine dispute of material fact. 473 F. Supp. 2d at 130. At trial, after the parties briefed the issue, Judge Hornby settled on an "Excessive Force in Violation of the Fourteenth Amendment; Use of Excessive Force that Amounts to Punishment" standard that he has memorialized in a pattern jury instruction. Dist. Me. Pattern Jury Inst. 3.1 (Hornby, J.).

After further review of the applicable precedents, and building on both my exploration of the question in Clarke and Judge Hornby's newly minted pattern instruction, I conclude that the standard to apply must include both the intent to punish and an objective evaluation of the reasonableness of the conduct. I will follow the standard for restrictions and conditions claims by a pre-trial detainees outlined in

O'Connor v. Huard, 117 F.3d 12 (1st Cir. 1997), a case that heretofore flew under my radar screen, and apply it to this claim of excessive force.

In O'Connor the First Circuit addressed the defendant's argument that the jury instruction did not "properly reflect" the elements of the plaintiff's Fourteenth Amendment claim. The First Circuit explained:

> The instructions to the jury were as follows:
> Plaintiff claims that his constitutional rights were violated when defendant deliberately provoked him into rage attacks and then disciplined him for his resulting outbursts. Specifically, his allegation is that he was punished without due process of law, in violation of his rights under the 5th and 14th Amendments to the United States Constitution.
> At the time of his incarceration at the Kennebec County Jail plaintiff was a pretrial detainee. In other words, he had not been convicted of a crime, but was being held pending trial. Under such circumstances, plaintiff could only be subjected to the restrictions and conditions of the detention facilities so long as those conditions and restrictions did not amount to punishment.
> Not all restrictions and conditions during pretrial detention amount to punishment in the constitutional sense, however. Once the government has exercised its authority to detain a person pending trial, it may obviously impose conditions or restrictions necessary to effectuate the legitimate goals of maintaining institutional security and ensuring the detained person's presence at trial.
> The question for you to decide is whether defendant imposed conditions or restrictions upon plaintiff that were reasonably related to those legitimate goals or whether they were arbitrary or without purpose.
> Absent a showing of an expressed intent on defendant's part to punish plaintiff, that question will generally turn on whether the conditions or restrictions could have been used for a legitimate purpose and whether they are excessive in relation to that legitimate purpose.
> If you find the conditions or restrictions were arbitrary or without purpose, you may infer that the purpose of the conditions or restrictions was punishment, and, therefore, unconstitutional.
> Trial Transcript, vol. III, at 440-41.
> These instructions accurately reflect the law as it relates to a pretrial detainee's claim of punishment in violation of the Due Process Clause. The government may detain one accused of a crime prior to trial in

5

> order to ensure his presence at trial. See Bell v. Wolfish, 441 U.S. 520, 536 (1979). Prior to an adjudication of guilt, however, a state government may not punish a pretrial detainee without contravening the Fourteenth Amendment's Due Process Clause. See id. at 535. The government may, however, impose administrative restrictions and conditions upon a pretrial detainee that effectuate his detention, see id. at 537, and that maintain security and order in the detention facility see id. at 536. When confronted with a charge by a pretrial detainee alleging punishment without due process, the "court must decide whether the disability is imposed for the purpose of punishment or whether it is but an incident of some other legitimate governmental purpose." Id. at 538.
>
>   Thus, if a particular condition or restriction of pretrial detention is reasonably related to a legitimate government objective, it does not, without more, amount to "punishment." Conversely, if a restriction or condition is not reasonably related to a legitimate goal-if it is arbitrary or purposeless-a court permissibly may infer that the purpose of the governmental action is punishment that may not constitutionally be inflicted upon detainees qua detainees. Id. at 538-39. The government has a valid interest in managing the detention facility and, toward that end, may employ administrative measures that may be discomforting or are of a nature that the detainee would not experience if he were released while awaiting trial. See id. at 540. Barring "substantial evidence" that an administrative measure is an exaggerated response to these considerations, "courts should ordinarily defer to their expert judgment in such matters." Id. at 540 n. 23.

Id. at 15-16. See also Surprenant v. Rivas, 424 F.3d 5, 13 -14 (1st Cir. 2005) (relying on O'Connor); Montes v. Ponce Municipality, No. 02-1409, 2003 WL 22461540 (1st Cir. Oct. 31, 2003) (unpublished disposition) (relying on O'Connor); Mulkern v. Cumberland County, Civ. No. 00-382-P-C, 2001 WL 1519409, 22 -23  (D. Me. Nov. 30,  2001) (applying O'Connor); Boivin v. Merrill, Civ. No. 97-177-B-B, 1999 WL 33117053, 2 -3  (D. Me. Jan. 6, 1999)(applying O'Connor).[3]  Although O'Connor, strictly speaking, might

---

[3] There is one further unpublished First Circuit case bears mentioning, McClain v. Clark, Civ. No. 93-2139, 1994 WL 129741, 2 (1st Cir. Apr. 13, 1994) (unpublished).  There the Panel reviewed a claim by a plaintiff who was being transported to court from a jail pursuant to an order of commitment and Writ of Habeas Corpus.  See McClain v. Clark, Civ. A. No. 89-0839-MC, 1989 WL 141713, *1 (D. Mass Oct. 19, 1989).  The plaintiff "told the correctional officers that he had waived his right to appeal a sentence imposed in Newton District Court and was not informed by the Judge that he had to appear in court." Id. The First Circuit applied an Eighth Amendment standard to the claim and cited, among other cases, Valencia v. Wiggins, 981 F.2d 1440, 1449 (5th Cir.), a Fifth Circuit case addressing a pre-trial detainee's

6

be viewed as a "restrictions and conditions" case rather than an unconstitutional use of force case, its facts and the facts of the cases that rely upon it are close to the situation presented by Dickinson's factual scenario.

*Purinton's Statement of Material Fact*

The claim in this case arises out of an incident that took place at the Cumberland County Jail at approximately 10:20 AM on Wednesday, May 31, 2006. (SMF ¶ 1.)  On this morning, Norman E. Dickinson was a pretrial detainee at the jail, who had been arrested on Monday, May 29, 2006, for violation of the terms of his probation. (Id. ¶ 2.) Shortly before the incident, at approximately 9:30 AM, Dickinson had been removed from a 72-hour holding cell to cell 206 within maximum security for masturbating in plain sight while wearing only his jail issue shirt and no pants.  (Id. ¶ 3.)

At approximately 9:50 AM, after Dickinson had been removed to cell 206, Corrections Officer Dick Ireland was informed by Master Control, which has observation of the maximum security cells, that Dickinson appeared to be scratching his left arm with an unknown item. (Id. ¶ 4.)  Officer Ireland entered Dickinson's cell, and observed a raw and bleeding cut mark approximately two inches long on Dickinson's left arm near the elbow. (Id. ¶ 5.)  Officer Ireland placed Dickinson on suicide watch for self harm, and removed all items from the cell except for the mattress. (Id. ¶ 6.)  Dickinson was strip searched, and produced a plastic cap from a deodorant bottle, which he informed Officer Ireland was what he had used to cut his arm. (Id. ¶ 7.)

After Officer Ireland exited the cell, Dickinson urinated under the door and stated that that was where all his bodily waste was going to go. (Id. ¶ 8.) Dickinson also stated

---

unconstitutional force claim and applying an Eighth Amendment standard.  See McClain, 1994 WL 129741 at *2.

to Officer Ireland that he was going to pull the sprinkler head, at which point Officer Ireland reentered the cell and removed the mattress from it. (Id. ¶ 9.)

Shortly after exiting the dayroom outside of the Dickinson's cell, Sub-control, which also has observation of the cells in maximum security, informed Officer Ireland that Dickinson was placing his foot in the toilet and flooding his cell. (Id. ¶ 10.) Upon reentering the dayroom, Officer Ireland observed fluid coming out from under cell 206's door. (Id. ¶ 11.) Officer Ireland then turned off the water to cell 206. (Id. ¶ 12.)

At this time, Corrections Officer Tyrone Leslie was assigned as the Maximum Security Pod Officer. (Id. ¶ 13.) After Dickinson had been transferred to maximum security, Officers Leslie and Ireland and Deputy Purinton had on several occasions tried to get Dickinson to calm down, but Dickinson grew increasingly aggressive. (Id. ¶ 14.) In addition to urinating on the floor and pouring water on the floor from his toilet, Dickinson kicked his cell door for several minutes. (Id. ¶ 15.)  After the water to Dickinson's cell had been turned off, Officer Leslie received calls from Sub-control and Master Control stating that Dickinson had climbed onto his sink was tampering with the sprinkler head in his cell. (Id. ¶ 16.)

At approximately 10:20 AM, Deputy Purinton, who had been in Master Control, reported to Officer Leslie that it appeared to him on camera as though Dickinson had something in his hand. (Id. ¶ 17.) Officers Leslie and Ireland, and Deputy Purinton then entered Dickinson's cell to search for contraband. (Id. ¶ 18.)  Officer Ireland opened cell 206 and ordered Dickinson to back up and face the wall, but Dickinson did not comply. (Id. ¶ 19.) Officer Ireland again ordered Dickinson to face the wall, and this time Dickinson complied. (Id. ¶ 20.)  Officer Ireland then ordered Dickinson to place his

8

hands behind his back and Deputy Purinton handcuffed Dickinson. (Id. ¶ 21.) Dickinson was not clothed at this time. (Id. ¶ 22.) As Deputy Purinton started to escort Dickinson out of the cell Dickinson began pulling up on the handcuffs. (Id. ¶ 23.) Deputy Purinton ordered Dickinson to stop resisting, and Dickinson complied. (Id. ¶ 24.)  Outside of the cell, Deputy Purinton ordered Dickinson to get on his knees and to put his head on the wall, and Dickinson complied. (Id. ¶ 25.)  Deputy Purinton then searched Dickinson's hands, feet and mouth for foreign objects or contraband. (Id. ¶ 26.)

As Deputy Purinton searched Dickinson, Officers Ireland and Leslie searched Dickinson's cell. (Id. ¶ 27.) Nothing was found in Dickinson's cell, whereupon Deputy Purinton escorted Dickinson back into his cell, where he was ordered to kneel on his bunk and put his head on the wall. (Id. ¶ 28.) Dickinson complied, and Deputy Purinton unlocked the cuff on Dickinson's right wrist. (Id. ¶ 29.)  Officer Ireland ordered Dickinson to place his right hand on the wall, and took hold of that hand. (Id. ¶ 30.) Deputy Purinton then unlocked the left cuff and put Dickinson's left hand on the wall. (Id. ¶ 31.)  At this time, Dickinson stated that he was done messing with the officers and that he would not act up anymore. (Id. ¶ 32.)   After his hands had been uncuffed, Dickinson was told not to resist and to stay where he was until the officers left. (Id. ¶ 33.) Dickinson complied, and the officers exited the cell and secured the door. (Id. ¶ 34.)

***Dickinson's Declaration***

The factual assertions in Dickinson's declaration that are material to his excessive force claim are:

> The handcuffs were applied to my wrists by Defendant with extreme and excessive force, causing great pain, causing injury, digging into my wrist bones and cutting off blood supply and feeling to my hands and fingers. (Dickinson Decl. ¶ 4.)

9

> The handcuffs were twisted into my wrists by Defendant with extreme and excessive force, causing great pain.  (Id. ¶ 5)
> Defendant pushed my head with extreme and excessive force into a concrete wall, causing great pain and injury.  (Id. ¶ 6.)
> Defendant pulled my handcuffed arms (behind my back) upwards with extreme and excessive force, causing great pain and injury.  (Id. ¶ 7.)
> After Defendant removed my handcuffs, significant bruising was visible on my wrists and was viewed by Jail Administrator Francine Breton.  (Id. ¶ 8.)

Dickinson's declaration does not put any of the facts leading up to the use of force in dispute nor does it contain any additional facts regarding Purinton's intent to punish.  Dickinson relies entirely upon an inference that because the degree of force applied caused him pain and discomfort, Purinton must have intended it to be punishment.

### *Recommended Disposition*

So the question is whether or not there is a sufficient dispute of the facts material to the O'Connor standard to allow Dickinson's Fourteenth Amendment claim to survive summary judgment.  Purinton has set forth facts supporting his claim that his treatment of Dickinson was reasonably related to the legitimate goal of subduing Dickinson after his repeated misconduct.  Dickinson's only evidence that Purinton's force was arbitrary and capricious are his somewhat conclusory assertions that the handcuffs were far too tight, causing him great pain and leaving temporary indentation and bruising, and that Purinton pushed his head too hard, causing him pain.  There is no evidence of an expressed intent on Purinton's part to punish Dickinson.  Under O'Connor, the question here turns on whether the force applied was used for a legitimate purpose and whether it was excessive in relation to that legitimate purpose.  In my view, based on the facts before me, fully crediting the facts in Dickinson's declaration, there is no basis to infer  -- let alone the

type of "substantial evidence" required by O'Connor -- that the purpose of the application of force was punishment. Thus, a necessary element of the Fourteenth Amendment claim of unconstitutional force by a corrections officer against a pretrial detainee is absent.

With respect to demonstrating an intent to punish, the actions of the defendant in O'Connor provide a useful juxtaposition to the actions of Purinton. O'Conner summarized:

> During this detention, an animosity developed between Huard and O'Connor, eventually leading to daily verbal confrontations. O'Connor called Huard names that evidenced O'Connor's disdain for what he believed was Huard's sexual orientation. Huard, in turn, called O'Connor "a scumbag, a low-life, a dirtbag, a drug addict, creep." Huard taunted O'Connor about his failure to get the medication he desired and his inability to cope without it. O'Connor would react to these taunts by kicking doors and banging the bars of his cell and by hurling verbal abuse at Huard. As a result of these actions, O'Connor would be removed from his cell and placed in administrative lockdown. Frequently, during these administrative lockdowns, the other inmates on the cell block would be restricted to their cells.

117 F.3d at 15. The Panel stressed:

> We emphasize that nothing in the resolution of this case or in this opinion is meant to suggest that a detention facility may not discipline a pretrial detainee who violates the facility's administrative regulations employed to maintain order and security. O'Connor's challenge was not that the Kennebec County Jail's system of allowing a pretrial detainee's discipline following a violation of its administrative regulations was suspect, but rather that Huard's intention was to punish O'Connor and her provocative or instigative actions were directed toward this end. Thus, the ability of a detention facility to reasonably discipline detainees who violate rules is not implicated by the issues presented in this case, in which a jury found that Huard's acts were tantamount to arbitrary and unreasonable punishment.

Id. at 16.   While a jury found for the plaintiff in O'Connor, the facts of this case fall on the other side of the Unconstitutional/Constitutional divide.

**Conclusion**

Based upon the foregoing, I recommend the court grant the defendant's motion for summary judgment.

## NOTICE

A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which *de novo* review by the district court is sought, together with a supporting memorandum, within ten (10) days of being served with a copy thereof. A responsive memorandum shall be filed within ten (10) days after the filing of the objection.

Failure to file a timely objection shall constitute a waiver of the right to *de novo* review by the district court and to appeal the district court's order.

August 3, 2007.

/s/Margaret J. Kravchuk
U.S. Magistrate Judge